hDECUIR, Judge.
. Plaintiff, Terry Crews, appeals a summary judgment granted in favor of certain defendants in this tort suit. Crews filed suit against Lanny Blalock and his insurer for injuries sustained in an automobile accident. Also named as defendants were Maxum Property Services, one of its partners, Bart Sullivan, and its insurer, Farmers Insurance Group. Crews alleged that Blalock was employed by Maxum and was in the course and scope of his employment at the time of the accident. Maxum, Sullivan, and Farmers argued that Blalock was an independent contractor, and thus, Max-um was not vicariously liable for the acts of Blalock. The trial judge granted summary judgment on this issue and dismissed Maxum, Sullivan, and Farmers.
The record before us includes the deposition testimony of Sullivan and Blalock. Sullivan testified that Maxum is in the business of maintaining properties which are in the foreclosure process. The Fort Worth, Texas company performs inspection and upkeep services on vacant properties located in Texas, Oklahoma, and [ {¡Louisiana. Maxum is comprised of two partners and no employees. The partners do most of the work themselves, but they *763 sometimes contract out the work that they cannot handle. Most of their Louisiana jobs around the time of the plaintiffs accident were performed by Blalock, a Louisiana resident whom Sullivan had never met in person. Blalock was paid a set fee per job and could reject those assignments which he did not wish to perform. Maxum had no written contract with Blalock, and either party could terminate their relationship.
Blalock testified that he received about one work order per week from Maxum at the time of the accident with Crews. The job was to be completed within a week usually, and Blalock was paid a set fee for each task he performed on that job. Blal-ock was responsible for all expenses, including mileage and supplies. No one supervised or directed his work, but he had no discretion to determine what work was necessary; he was paid for only those tasks specified on the work order he received. In his first deposition, Blalock testified that he works for Maxum “off and on” and does odd jobs for others. Also in his first deposition, Blalock said that he uses no other name for his work. However, in a subsequent deposition, he stated that he calls his company Louisiana Maintenance and Construction, which name is printed on his invoices and is the name in which he was paid by Maxum. He testified that he is self-employed doing maintenance work for mortgage companies and, at the time of the accident, was trying to get work from companies other than Max-um. Maxum did not withhold taxes from his paychecks or pay taxes on his behalf.
In Perkins v. Gregory Mfg. Co., 95-01396 (La.App. 3 Cir. 3/20/96); 671 So.2d 1036; writ denied, 96-0971 (La.5/31/96); 673 So.2d 1039, this court determined that an independent contractor relationship existed between a landowner and a contractor hired by the landowner to harvest timber. We affirmed summary judgment granted |3in favor of the landowner, finding no evidence to support liability on the part of the landowner for injuries sustained by a tree trimmer. We explained the prevailing legal principles which we quote herein:
The legal relationship between Boise and Kim Johnson Trucking is determined from the contract creating the relationship and from their intentions in establishing and maintaining that relationship, as exhibited in its performance and surrounding circumstances. Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (La.1972). To attain the status of an independent contractor, it must be established that a valid contract exists between the parties and that the contract calls for specific piece work as a unit which can be accomplished by non-exclusive means. Id. In carrying out the contractual obligation, the independent contractor must be able to employ its own methods free from the control and direction of the principal, except as to the desired results. Id. Furthermore, the contract must set a specific price for the overall undertaking, provide a specific time or duration in which the undertaking must be completed, and not be subject to termination at the will of either party without that party being subject to liability for breach. Id. Of primary concern, however, is whether the principal retained the right to control the work. In ascertaining the level of control retained by the principal, the actual control exercised is not as important as the right to control. Smith v. Crown Zellerbach, 486 So.2d 798 (La.App. 3 Cir.), writ denied, 489 So.2d 246 (La.1986).
Id. at p. 10; 1039.
The nature of the relationship between Maxum and Blalock must be determined in light of these principles. The record reveals that they had an arrangement whereby Maxum would offer a job to Blalock, via faxed work order and for a set fee, and Blalock could either accept or reject the assignment. For those jobs which Blalock agreed or contracted to perform, he used his own vehicle to get to the property, purchased his own supplies, and *764 scheduled the work himself within certain time limits. For instance, on the day of the accident herein, Blalock was in Lees-ville for a Maxum job. He had agreed to change locks and winterize a property for a fee of $59.50. He traveled to Leesville from his home in Clinton in a friend’s vehicle because his own vehicle was broken. He paid for his gas and purchased from his own |4funds the new locks to be installed on the property. He had several days in which to perform the work described in the work order. Maxum did not direct the manner in which Blalock worked, but was interested solely in the end result, i.e., that new locks were in fact installed and that the property was winterized.
These facts are essentially undisputed and illustrate in our view an independent contractor relationship between Blalock and Maxum. Consequently, there can be no vicarious liability on the part of Maxum for the alleged negligent acts of Blalock. Maxum, Sullivan, and Farmers, therefore, were properly dismissed from this suit.
Our de novo review of the summary judgment granted below reveals no genuine issue of material fact. Accordingly, we affirm the judgment rendered below, at plaintiffs cost.
AFFIRMED.